## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAUSE OF ACTION INSTITUTE <br> 1875 Eye Street, N.W., Suite 800 <br> Washington, D.C. 20006, <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY <br> Washington, D.C. 20505, <br><br> Defendant. | Civil Action No. 16-1034 |

## COMPLAINT

Cause of Action Institute ("CoA Institute") brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking access to records concerning the undue influence of, and involvement by political appointees in, the FOIA processes of the Central Intelligence Agency ("CIA" or "Defendant"). The requested records were created by the CIA Office of Inspector General ("CIA-OIG") but are accessible under FOIA through the CIA.

## NATURE OF THE ACTION

1. In providing a private right to request records from Federal agencies and to seek judicial remedies when those agencies fail to comply, FOIA is the statutory mechanism by which requesters vindicate the "fundamental principle of public access" to information concerning the modern administrative state—information long "'shielded unnecessarily from public view . . . [by] possibly unwilling official hands.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 80 (1973)). The effective and

apolitical administration of FOIA is vital to ensuring a transparent and accountable Executive Branch.

2.   CoA Institute, a non-profit government "watchdog" organization, relies on FOIA to accomplish its oversight and educational mission. It files numerous FOIA requests on an annual basis and relies on agencies to process those requests without respect to the identity of the requester, the subject-matter of the request, or the potential political impact or newsworthiness of responsive records.

3.   President Obama entered office with the promise that "[t]ransparency and the rule of law will be the touchstones of [his] presidency" and stating that "[t]he Freedom of Information Act is perhaps the most powerful instrument we have for making our government honest and transparent, and of holding it accountable." President Obama Delivers Remarks at Swearing-In Ceremony (Jan. 21, 2009), *available at* http://goo.gl/p97TwK. In a memorandum issued the same day, President Obama declared that "the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike." Presidential Memorandum for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 21, 2009). The President has continued to state support for such transparency by, for instance, supporting the current bills in the House and Senate designed to improve FOIA procedures and transparency.

4.   In practice, the current Administration has neglected its duties under FOIA and undermined the very goals articulated by the President at the outset of his presidency. In a non-public April 2009 memorandum, for example, then-chief legal advisor, White House Counsel

Gregory Craig, quietly instructed all Federal agencies and department general counsel to consult with the Office of the White House Counsel on all document requests that may involve "White House equities." *See* Memorandum from Gregory Craig, Counsel to the President, to All Executive Department and Agency General Counsels Concerning Document Requests (Apr. 15, 2009) ("Craig Memo"), *available at* http://bit.ly/1UwFh2z.  The Craig Memo states that "[t]his need to consult with the White House arises with respect to all types of document requests, including Congressional Committee requests, GAO requests, judicial subpoenas, and FOIA requests." *Id.*

5. The result of the Craig Memo is the unlawful expansion of White House control of agency FOIA processes and usurped agency responsibility for finalizing determinations.  Its implementation has significantly delayed the production of responsive records. *See, e.g.*, Josh Gerstein, *Chaffetz blames White House memo for FOIA delays*, Politico, June 2, 2015, http://politi.co/1UhI0Ks (quoting Chairman of the House Committee on Oversight and Government Reform, Rep. Jason Chaffetz: "The heart of the backlog lies in this memo . . . 'The White House equities.' You want to see the bottleneck? Look at the White House[.]").

6. In addition to the White House cooptation of agency responsibility for the FOIA process, agencies themselves have politicized FOIA by adopting "sensitive review" procedures that permit political appointees, senior agency officials, and public affairs staff to participate in and influence the processing of document requests and the treatment of responsive records. *See, e.g.*, U.S. H.R., Comm. on Oversight & Gov't Reform, Staff Report: A New Era of Openness? How and Why Political Staff at DHS Interfered with the FOIA Process (Mar. 30, 2011), *available at* http://1.usa.gov/1TZGIaY; Eliana Johnson, *The Obama Administration's Newly Political Approach to FOIAs*, Nat'l Rev., June 9, 2015, http://bit.ly/1UwGsit (describing

sensitive review at the Department of the Treasury); Ted Bridis, *Playing politics with public records requests*, NBC News, July 21, 2010, http://bit.ly/1UhJvs9 (describing "sensitive review" at the Department of Homeland Security); *see also* Mike Ruggs, *Not Just the IRS: Federal Agencies Are Politicizing the FOIA Process, Too*, Reason, May 14, 2013, http://bit.ly/1sqHRy0; Cause of Action Inst., *FOIA Follies: HUD Flags Sensitive Freedom of Information Act Requests for Extra Scrutiny; Political Appointees Involved*, July 31, 2013, http://bit.ly/1Y4qsHm. At least one agency has formalized the "sensitive review" process in its internal guidance. *See* Internal Revenue Serv., Internal Revenue Manual 11.3.13.2.7 (revised Aug. 14, 2013), *available at* http://1.usa.gov/1X0tz3C (certain requests "require the initiation of a sensitive case report and coordination with the local Public Affairs Specialist").

7. Concerned by the internal politicization of FOIA within federal agencies, on August 23, 2010, Senator Chuck Grassley and Representative Darrell Issa sent letters (the "Issa-Grassley Letters") to twenty-nine (29) Inspectors General (including to the CIA-OIG) to request that they "conduct an inquiry into the agency's FOIA office to determine whether, and if so, the extent to which political appointees are made aware of information requests and have a role in request reviews or decision-making." *See* Ex. 1 at 1 (sample letter to Dep't of Education Office of Inspector General); *see also* Office of Senator Chuck Grassley, Press Release: Grassley, Issa Seek Information About FOIA Requests (Aug. 25, 2010), *available at* http://1.usa.gov/1Vz6fsG (describing the requested reviews as covering "whether federal agencies are taking new steps to limit responses to [FOIA] requests from lawmakers, journalists, activist groups and watchdog organizations" and listing the CIA-OIG as one of the recipients of the inquiry).

8. In the wake of the Issa-Grassley Letters, and despite significant press criticizing the Administration for its poor efforts to ensure transparency and openness, agencies continued

to abuse the law and permit political appointees to insert themselves into the FOIA process. *See, e.g.*, Josh Gerstein, *Grassley probes alleged FOIA interference at State Department*, Politico, May 22, 2015, http://politi.co/1UjfMPd ("[A]nonymous sources claim[ed] former Clinton chief of staff Cheryl Mills insisted on reviewing all State records set for release relating to the Keystone pipeline and sought to block disclosure in some instances."); Laura Meckler, *Hillary Clinton's State Department Staff Kept Tight Rein on Records*, Wall St. J., May 19, 2015, http://on.wsj.com/1Y4riE1.

9. As a result, on June 23, 2015, Senator Ron Johnson, Chairman of the United States Senate Committee on Homeland Security and Governmental Affairs, wrote to several Inspectors General to request analysis "of non-career officials' involvement in the FOIA response process . . . for the period of January 1, 2007 to the present," including whether such "involvement resulted in any undue delay of a response to any FOIA request or the withholding of any document or portion of any document that would have otherwise been released but for the non-career official's involvement in the process." *See* Ex. 2 at 3 (sample letter to Inspector General, Nuclear Regulatory Comm'n); *see also* Sam Knight, *FOIA Meddling By Obama Appointees Being Probed by Senate Committee*, Dist. Sentinel, Aug. 26, 2015, http://bit.ly/1X0uLE8.  Upon information and belief, the CIA-OIG received such a request from Senator Johnson and the Senate Homeland Security and Governmental Affairs Committee.

10. The present lawsuit seeks the production of the two final reports or responses prepared by the CIA-OIG to the above-described August 2010 and June 2015 congressional inquiries. Although other Inspectors General have disclosed their final reports voluntarily or otherwise furnished copies to CoA Institute under FOIA, the CIA is one of the few agencies that refuses to respond to CoA Institute and release the relevant records. In two FOIA requests, CoA

Institute requested these final reports or responses, but the CIA has yet to issue any final determination or produce the documents. In one case, the CIA has stonewalled CoA Institute for three years and has twice indicated that it "will not acknowledge or respond to any additional queries regarding the status" of the CoA Institute FOIA request. *See infra* ¶¶ 20–21.

## JURISDICTION AND VENUE

11. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii).

12. Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

13. CoA Institute is a non-profit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair. In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability. It regularly requests access under FOIA to the public records of federal agencies, entities, and offices, and disseminates its findings, analysis, and commentary to the general public.

14. The CIA is an agency within the meaning of 5 U.S.C. § 552(f)(1). It has possession, custody, and control of records to which CoA Institute seeks access and which are the subject of this Complaint.

## FACTS

15. By letter, dated May 30, 2013, CoA Institute submitted a FOIA request to the CIA seeking "a copy of [the CIA] response to" the August 23, 2010 Issa-Grassley Letters. Ex. 3. CoA Institute also requested classification as a representative of the news media for fee purposes. *Id.*

16.     Defendant received the May 30, 2013 FOIA request the same day it was sent and assigned it the tracking number F-2013-01843. *See* Ex. 4.

17.     Defendant waived any fees associated with the processing of the May 30, 2013 request "as a matter of administrative discretion," as it "believe[d] fees [would] be minimal." *Id.*

18.     For the remainder of 2013 and the entirety of the next two years, Defendant unilaterally extended its response deadline on multiples occasions. For example, in a telephone conversation on January 22, 2014, Defendant indicated it would provide a final determination by April 9, 2014. After the passage of that date, on April 18, 2014, Defendant stated that the disclosure officer assigned to the May 30, 2013 FOIA request was on vacation for a number of weeks and would provide an update when he returned. When no response, update, or final determination was forthcoming, CoA Institute again called Defendant on June 16, 2014 only to be told that the CIA computer system was "down." A few days later, Defendant stated that its search for responsive records was ongoing.

19.     By letter, dated June 25, 2014, Defendant confirmed the June 16, 2014 phone conversation and provided an "updated estimated completion date of 1 November 2014." Ex. 5. Two-and-an-half months past that date, on January 13, 2015, Defendant again extended its response deadline by approximately seven months to August 13, 2015. Ex. 6.

20.     Following the expiration of that completion date, by letter dated August 27, 2015, Defendant extended its deadline by yet another seven months to March 24, 2016. Ex. 7. Defendant also indicated that, "[i]n the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after" the next estimated date of completion. *Id.*

21. By letter, dated April 7, 2016, CoA Institute notified Defendant of an address change and requested an update on the processing of the May 30, 2013 FOIA request, which had then been pending for 1,043 days, or almost 3 years. Ex. 8. By letter, dated May 2, 2016, Defendant responded to the CoA Institute notice and extended its estimated date of completion by an entire year to March 24, 2017 (also stating that this date "is subject to change"). Ex. 9. Defendant exhorted CoA Institute to "be assured that your request is still in process, and we are making every effort to complete it as soon as possible." *Id.* Yet, Defendant also stated—again—that "[i]n the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after 24 March 2017." *Id.*

22. While Defendant was processing the May 30, 2013 FOIA Request, CoA Institute submitted a second request on September 28, 2015 to obtain "a copy of any report or response, including attachments and exhibits," prepared in response to the June 23, 2015 letter from Senator Johnson. Ex. 10 at 1. CoA Institute requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.* at 1-3.

23. After failing to receive any form of acknowledgment from the agency, CoA Institute resubmitted its second FOIA request on December 15, 2015. *See* Ex. 11.

24. Defendant received the resubmitted September 28, 2015 FOIA request on December 30, 2015 and assigned it the tracking number F-2016-00773. *See id.* Defendant did not issue a fee determination in its acknowledgment letter and did not provide an estimated date of completion. *Id.*

25. The two FOIA requests that are the subject of this Complaint are overdue. The May 30, 2013 FOIA Request has been pending for 1,099 days, while the September 28, 2015 FOIA Request, received by the CIA on December 30, 2015, has been pending for 155 days.

**COUNT I**

**(Violation of FOIA: Failure to Comply with Statutory Deadlines)**

26. CoA Institute repeats paragraphs 1 through 25.

27. FOIA requires agencies to respond to requests within twenty (20) business days or, in "unusual circumstances," within thirty (30) business days. 5 U.S.C. §§ 552(a)(6)(A)–(B). If an agency requires additional time, FOIA mandates that the agency provide requesters "an opportunity to arrange with the agency an alternative time frame for processing the request[.]" *Id.* § 552(a)(6)(B)(ii).

28. Defendant received the May 30, 2013 and September 28, 2015 FOIA requests on May 30, 2013 and December 30, 2015, respectively. In neither case has the CIA issued a final determination.

29. Defendant has improperly denied CoA Institute access to agency records by failing to issue final determinations and produce the responsive records within the time limits set forth in 5 U.S.C. § 552(a)(6).

30. Defendant also failed to comply with FOIA in that it failed to arrange an alternative time frame for responding to the requests in question. Defendant instead has refused to respond to CoA Institute inquiries about the status of the requests or otherwise granted itself unilateral extensions of time to complete the processing of what should have been a simple and uncomplicated production of agency records.

31. CoA Institute has fully exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

**RELIEF REQUESTED**

WHEREFORE, CoA Institute respectfully requests and prays that this Court:

a. Order Defendant to process the May 30, 2013 and September 28, 2015 FOIA requests expeditiously and make a final determination within twenty (20) business days of the date of the Order;

b. Order Defendant to produce all responsive records responsive to the May 30, 2013 and September 28, 2015 FOIA requests promptly after issuing its final determinations;

c. Order Defendants to issue a *Vaughn* index accompanying the records produced explaining each redaction or withholding;[1]

d. Award CoA Institute its costs and reasonable attorney fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

e. Grant such other relief as the Court may deem just and proper.

//

//

//

//

---

[1] *See generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (requiring an agency to prepare an index correlating each withheld document, or portion thereof, with a specific FOIA exemption and nondisclosure justification).

Dated:  June 2, 2016　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ John J. Vecchione*
　　　　　　　　　　　　　　　　　　　　　　Alfred J. Lechner, Jr.
　　　　　　　　　　　　　　　　　　　　　　(*pro hac vice* pending)
　　　　　　　　　　　　　　　　　　　　　　John J. Vecchione
　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 431764
　　　　　　　　　　　　　　　　　　　　　　Lee A. Steven
　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 468543
　　　　　　　　　　　　　　　　　　　　　　Ryan P. Mulvey
　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 1024362

　　　　　　　　　　　　　　　　　　　　　　CAUSE OF ACTION INSTITUTE
　　　　　　　　　　　　　　　　　　　　　　1875 Eye Street, N.W., Suite 800
　　　　　　　　　　　　　　　　　　　　　　Washington,  D.C. 20006
　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 499-4232
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 330-5842
　　　　　　　　　　　　　　　　　　　　　　john.vecchione@causeofaction.org
　　　　　　　　　　　　　　　　　　　　　　lee.steven@causeofaction.org
　　　　　　　　　　　　　　　　　　　　　　ryan.mulvey@causeofaction.org

　　　　　　　　　　　　　　　　　　　　　　*Counsel for CoA Institute*